Good morning. Good morning, Your Honors. Morning. Morning. Okay, let's see. Now, you've got two of you, I believe. I take it back. You're representing the appellant, and there's just one of you, right? Only one of me, Your Honor. Okay, it's the other side that has the two. I apologize. Okay, so you're Mr. Jacobs. Please proceed, Mr. Jacobs. Good morning, Your Honors, and may it please the Court, Andrew Jacobs and Jason Yu of Snow and Wilmer for FeeDx Holdings this morning. There are two primary issues here, and both relate to the complete irrationality or manifest disregard of the law of the pre-settlement damage award of $16.6 million in this case. There are two different reasons why this award should be overturned in full, the award of the pre-settlement damages. The first one hinges on the fact that once the tribunal denied rescission, it was stuck with the fact that it had affirmed a settlement agreement. So there's a settlement agreement in this case. It's fused in and part of the contract with the exclusivity agreement. Forgive me, counsel. I know you have an approach you would like to take, but if I can compare standing to a building, we've got to have a foundation before we get inside the building, and I want to talk about the foundation for a minute. How do you have valid diversity jurisdiction in this case, given who the parties are? As I understand it, two foreign corporations, one in the States. How does that work? We, of course, proposed an alternate path for jurisdiction as well, but to the point of the diversity jurisdiction, Judge Smith, we said in our notice of removal, it wasn't a big mystery to anybody, that Nippon was a nominal party. With respect, Nippon was jointly and severally liable under one of the contracts. There was an award of lots of attorney fees. How can they be a nominal party? Well, we did not bring claims against Nippon. Nippon was moving to confirm an award. Right, but they were a plaintiff, weren't they? They were a failed plaintiff. They lost the only two claims as to which they were a plaintiff. Hold on. They were a plaintiff to confirm the award in state court, correct? Yes, Your Honor. So explain to me how a – is there any case that says that a named plaintiff who brings a lawsuit can be a nominal party? We approached – that is not how we approached it, Judge Nelson. I understand how you approached it. And, I mean, this may be moot because, as you pointed out, you may have federal question jurisdiction. So, I mean, I'm not – but I don't understand. I understand you pled they were a nominal party in the removal papers and they didn't challenge that. There is waiver that applies when someone doesn't challenge a factual aversion, but that doesn't seem to be what we're dealing with here. This is not a case where you're claiming that a co-defendant was fraudulently joined to defeat your diversity jurisdiction and, you know, you state, well, there's no claim against them. And this is a case where a plaintiff sues. I don't understand. I'm just not aware of a plaintiff, a named plaintiff, ever being a nominal party. I understand what you're saying, Judge Nelson. And, you know, I've litigated fraudulent joinder, and this doctrine of nominal party seems to me very slightly different from fraudulent joinder, which is part of why we tried to discuss it, which is not persuasive to your honors, as a matter of the substance of the claim, which was our approach. We're not saying they were fraudulently joined. Well, just to be clear, I mean, I wouldn't assume that it's not persuasive. I think these are complicated questions. But it does seem odd, as Judge Smith asked you, that a named plaintiff could be a nominal. Well, I guess if a fraudulently joined party is awarded wrongfully the status of co-awardee under an arbitration award, I mean, does that make them forevermore someone who is not a nominal party? I mean, they clearly are an awardee. I mean, I can't get around that. If that's fatal, then that argument loses. Well, let's assume for a moment, arguendo, that they're not a nominal party and they're not improperly joined. Doesn't that defeat diversity jurisdiction? Our theory of diversity jurisdiction devolves to nominal party status. That's what we did in our notice of removal. It stands or falls on that, Judge Smith. But if you're wrong about that, is there diversity jurisdiction? If we're wrong about that, we have to rely on the New York Convention argument. Okay, so you get back to the New York Convention then. Yeah, no, that's what I have. On the first prong, that's what I have. If that doesn't work, then it's on to New York. So on the federal jurisdiction, you didn't assert that in the notice of removal. Is that detrimental to the jurisdiction? Not at all. This is the second time in my career that subject matter jurisdiction has become an issue in the last week, and you're getting in front of this. And that's because it's one of the most important things, right? It's safeguarding that you're only deciding things you're supposed to decide, which is exactly why we can't waive it and you can raise it at any moment, which is why, just like you wouldn't stand on the formalism of saying, I can't collude into jurisdiction by having them mess up and waive something. I can't make up jurisdiction that way. But it also can't go away if it's there in the first place. And so that's the good thing about subject matter jurisdiction analysis, is that you have the power, and I would suggest the duty, to decide that. If a party doesn't assert it and it's not – I mean, so it's interesting because federal jurisdiction in the removal context can exist based on the face of the complaint. If you can get the facts from the face of the complaint, you can remove it. Is the same true – Section 205 doesn't use the face of the complaint. It says it has to be shown in the notice of removal. Is that a higher standard to show it in the notice of removal than on the face of the complaint for purposes of the diversity jurisdiction statute? I think I have better answers to these questions, Judge Nelson. For one thing, on the face of the notice of removal, you have the presence of foreign corporations in a commercial award that was rendered in America. So you have on the face of the notice of removal the facts that make it subject to the New York Convention. You look at the last page of the signed final award, and it says we're doing this pursuant to the New York Convention, the international convention for the resolution of these disputes. So they knew it going in. They knew it going out. And then I think as far as the – But that's the beginning. That's how we analyze this question is we look at the face of the notice of removal, and if we can determine that it satisfies the requirements for 203, then Section 205 is satisfied. What if you hadn't have said that? Would we be able to go back and reconstruct federal jurisdiction here because now we know that these parties are here? Or would the defect, if there had been a procedural defect, would that have waived our federal subject matter jurisdiction? So I do think what I said formerly should be sufficient to resolve the issue, but to the exact point of your question, Judge Nelson, I think it matters a lot that we were here in federal court the entire time because the court was asserting jurisdiction. The district court below – Yeah, but if it was wrongly asserting jurisdiction, then we've got a problem. And that's my question. And I tend to agree with you that if we can determine it from the face, you're okay. But my question is more of a theoretical one of does just federal jurisdiction exist no matter what, or is there actually a requirement that you be able to tell federal jurisdiction from the purpose, from the face of the notice of removal or from the complaint? Both. And I'm really trying to hone in on what I think is the core of the question, Judge Nelson, and my answer wasn't really – it sounds like I'm stepping to the side. I'm not. I think it matters that we're in federal court the whole time because when you're in federal court the whole time, the court retains the power the whole time to re-question and re-determine its subject matter jurisdiction. And in the first place, we weren't discussing the New York theory more assertively because nobody questioned it. There was no reason for us to have been opining about it further. It's also implicit in the citation that we gave to the district court of that. Well, yeah, and again, this may not matter for this case, but it raises an interesting question. I don't think it's true that if federal jurisdiction is not apparent on the face of the complaint or the notice of removal, you can litigate it for two years, and then all of a sudden somebody just discovers it. Oh, my gosh, we have this statute that no one had thought of. I think it has to be apparent from either the face of the complaint or the notice of removal. And, Judge Nelson, I think that under that standard we should prevail because it's apparent on the face of both. So I think that's my best answer to that. That you wouldn't fail, did you say? No, it's there. It's there on the face of the notice. It's there on the face of the complaint. And so based on that, if we're going to say that we can be mistakenly in federal court but you can't correct the subject matter jurisdiction by substituting a correct understanding for an incorrect one, which I still think you could under the case law. Your point is there was no mistake in the beginning. So my questions and my concerns are not relevant to this case. We'll wait for some other very interesting case. It's a very important issue. But I think we have jurisdiction under the New York Convention, and they made the award under the New York Convention. It's like there's some kind of mystery. I mean, you read the last page of their award. They say it's awarded under the New York Convention. They know it's an international commercial dispute cited in America, which is just like the cases that we cited to you in response to your Honor's request last week. Okay, Mr. Jacobs, how do you reconcile your argument under the New York Convention with the Ninth Circuit's decision in Faison? I'm not understanding, Your Honor. No, I said your position is that the New York Convention under Section 2 controls and the Sixth Circuit, not the Sixth Circuit, but the Ninth Circuit has made a decision in the case of Faison. How do you reconcile those two things? My understanding is that I thought the Ninth Circuit had not resolved this issue, and the Second and Third Circuits had decided that you could, in fact, have recourse to the domestic arbitration standards in a New York case, but that you automatically had jurisdiction under the New York Convention. I might be mistaken about that. I might be mistaken. So the cases that we explored, the cases that were cited to us, and the cases that were in the briefings that we reviewed on this, the Second and Third Circuits have recognized that there is subject matter jurisdiction. The Eleventh Circuit had recognized that as well. And the Eleventh Circuit, excuse me, the district court case we cited from California also indicated that a number of district courts within the circuit have been entertaining New York petitions and also cross-applying the domestic standards for relief under 9 U.S.C. 10. So they've been applying the domestic standards in the foreign arbitrations. So as you know, the standard, if we move beyond this jurisdictional question, the standard on arbitral awards is pretty high. It has to be completely irrational. Assuming we agree that maybe we would have done this differently on the award of the $19 million, explain to me why there's just no basis for the arbitrator to have gotten that result. There's no basis because it's manifest disregard for the law in two parallel ways that lead you to the same conclusion. There's the California statute that was cited relentlessly to the arbitrator. That's 3358. 3358, and the arbitrator knew that was the law because if you look at, and it's at page ER 250. But that only controls $7 million of the claim, right? No, that controls the $16.6 million because it's necessary under 3358 that you not have a better day than if everybody performed. And you can't, the thing that, the district court did this too, to be frank. I'm criticizing both in this sense. If you're going to say, I'm going to credit you $7 million because I'm applying 3358, 3358 entails that necessarily you have a release. You can't have the settlement agreement and not have a release. And so 3358 says you can't have better than your best day if everybody performed. If everybody performed, you have a release. Well, it depends on how you interpret that release, doesn't it? I mean, it's curious, Judge Nelson, because the analysis says that the trigger for the release is the payment of $7 million. I'm going to credit you $7 million, but there's no release. I mean, it's just baffling how one arrives at that conclusion. You're disaggregating two things that can't be pulled apart. And they both did that. The district court did it to baby split. I can't understand why the arbitrators did it. But that's only one of the— Your argument, really, I gather, as far as the 3358 issue is concerned, depends on a belief that the documentation, whether it was properly done or not, entailed a release of a certain portion of what was ultimately awarded. Is that correct? Both of the two arguments I'm presenting devolve in part to the presence of the release. Okay. They do. And what is your best argument that the release— and by the way, which of the versions of the document are you referring to that control the release issue from your perspective? It's at the ER-120, the ER-119-120 in the record. Is this the amendment or is this the original document? It's the settlement agreement. The settlement agreement was the third document, right? It's the settlement agreement. It's the settlement agreement's release. And that's the whole thing I started off with before we went to New York on that, is that if you're going to have a decision that you're affirming the existence of the settlement agreement, California law doesn't let you—it's not a matter of taste or opinion whether or not you can sue under a settlement agreement for damages and then go ahead and sue for the claims that you settled. I mean, California law is crystalline about that. You can't do that. And that's the first of these two problems. You're raising a very interesting argument, though, because you seem to be suggesting the district court can't do what it did. So we need to either cut back completely. You're taking an all-or-nothing approach. You're saying that if we go along and buy into the district court's theory on the $7 million, we've also got to scale back on the underlying damage. Or you could say I was wrong and just say, no, that's a fair factual issue, which is their position and the district court's position. I don't agree with it. But my position, I think, does lead you to the idea that it stands or falls. I think that's right, Judge Nelson. Okay, Mr. Jacobs, I want to go back to my phazon question, and that's phazon versus United Coconut Chemicals. I guess the point I was trying to make is that in that case, they said diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants. Isn't that what this case is all about, a foreign plaintiff suing a foreign defendant? I think, Judge Drain, that's why it looks like in this argument I'm getting washed out on diversity jurisdiction, and if I survive jurisdictionally, I do so through New York. And I think phazon kills me on the first of those two points from Your Honor's statement just now. So I think we do found our argument on New York. But, again, you just cannot do this in the law. You cannot have a settlement agreement and say it's not rescinded. I mean, nobody made the arbitrator say it's not rescinded. The arbitrator's construction of the contract that we're entitled to rely on here, most of it being against us, is the settlement agreement is not rescinded. If it's not rescinded, you can't sue on the settled claims. I mean, that's manifest disregard of the law, and then giving them a better day than they could have gotten. I mean, think back to what would have happened if no one ever sued anybody here. They're getting a windfall because there's an arbitration that has to do with the settlement agreement, and somehow they're getting back to a position that's even better than if there was no arbitration or litigation. That's four square what 3358 says you cannot do. Help me with this. My recollection is the settlement agreement contained certain requirements. People had to fulfill them. And the arbitrators concluded they didn't, and therefore the agreement wasn't necessarily a void, but the reality is it was a breached contract on both parts, and the court took the position, and I gather that the arbitrators did, that the settlement agreement didn't settle anything. It just set a new ground for argument about what had occurred and treated this, what would normally be a 1541 kind of settlement, as just another argument for the parties. I guess there's two problems with, and you've accurately summarized what they're saying, Judge Smith, but there's two problems with that. And one is that if you're going to go ahead and say, well, it breached and it doesn't work, then you can't go ahead and get the benefit of damages under it because you breached it, which is the $2.6 million. That part is for breach of the settlement agreement that's in the award. And at the same time, you're saying, oh, but no, the covenants, the releases that get me to that don't work. The award itself, notwithstanding the alleged breach, is still tied back into the settlement agreement. That's where the numbers came from. You can't have it both ways. Either you had a complete settlement agreement and you have to include the release, or you don't look at the numbers there either. Is that right? Essentially. I mean, I understand harmonizing the things, but you can't harmonize a settlement agreement, which is called a settlement agreement, which has a release, and then say, oh, but, at the same time, the releases are all gone. That flatly contradicts what a settlement agreement is and how you litigate one in California law. We have coals in five cases. You're either going to say I'm affirming the settlement agreement or I'm not affirming it. They were unable to rescind it, so they're stuck with the releases. And the other part of it is there's another contradiction I alluded to, which is this whole, well, you breached that part of the settlement agreement. I'm going to apply this part to have $2.6 million of damages on you, FedEx. That applies. But then this whole $7 million credit, going to the point of how absolute it goes, Judge Nelson, they're saying, well, you get the $7 million credit. What's the predicate for the releases operating in the settlement agreement? The payment of the $7 million. So the district judge said to split the difference, I'm going to say, oh, you can have a credit for $7 million, but you don't have the release that you necessarily affirm in a settlement. I mean, it doesn't make any sense at all. Do you want to save any time? You don't have to. I started at $15, right? Right at $15, you're down to one minute and 26 seconds. You start at $20. This is how much time you have left. Oh, I start at $20? Yeah. Okay, then I would reserve. Okay, very well. Yeah, thanks, Your Honor. Okay, now, the next two folks are going to divide your time, and Mr. Ferrari, you're going to have 15 minutes, is that right? Correct, Your Honor. Okay, very well. Actually, we may go where I might do the rebuttal as well. You don't have a rebuttal. So five minutes. That solves that problem. Well, one point. You may just argue the full 20, you're saying. Possibly, yes. There you go. Why don't we put 20 on the clock and see where it goes? Well, sorry, Judge Smith, you should have said that. I like to divide it only because if your other partner is going to have any time at all, he better have his own clock, otherwise it's going to disappear. So it's up to you. I agree, Your Honor. My experience is that people crowd each other's time out. So do you want to keep your time split or do you want to go to 20 minutes and see what's left over? Let's keep it split, Your Honor. Okay, very well. Good morning, and may it please the Court, I'm Charles Ferrari, representing Hay Day Farms, Inc., Nippon Kokusai Agricultural Holdings, Inc., and with me is Josh Eichenstein. Now, there's a wrestling that the other side had, and what we have to do here, though, is we have to give deference to you. Do you want to talk about jurisdiction first? Or you're comfortable that we have federal question jurisdiction? You didn't respond. I mean, you didn't know that that was an issue. Do you have any reason why we don't have federal question jurisdiction? Well, I frankly would have to brief more with the New York standard on that, but I do think there's clearly a lack of total complete diversity, and that isn't waivable no matter what was done by the parties. So we believe that the award for $21 million plus in damages and costs should stand in its entirety. The district court was correct when it found, confirmed the award, but it exceeded its authority when it vacated $7 million of the award, which is subject to the cross-appeal. But you agree that if you get the full amount, is there any? So it seems to me you've got two questions here. One is breach and one is damages. Once you get to the breach, and it seems like both parties breached in some way. I mean, at least the arbitrator might not have been illogical in making that conclusion, but if you get to damages, is there any theory under which $21 million, including the $7 million, wouldn't have given you windfall profits that you never would have expected? There's several, Your Honor, if I may. First of all, the award, there wasn't a breach. Okay. Let's assume there was a breach. Well, set aside the breach. Is there any theory under which if both parties fulfilled their obligations under the contract that you – because isn't that the standard under 3358? Right, and the difficulty, Your Honor, is there's actually two contracts, and one of them is the settlement agreement. And unlike traditional settlement agreements where, hey, once it's signed, the releases are done and you're done. If there's an issue, it's a breach of the settlement contract. That's not the case here. There was a specific provision that FedEx insisted was left in. It said everything else remains except for what? Yeah, until that is paid, the final payment is done, there's no release of the EDPA as between Hay Day and FedEx. But if you were awarded, as the arbitrator did, the extra $7 million, isn't your client getting a double recovery under that? They are not getting a double recovery. In fact, the way that it worked out is the tribunal actually kept my clients from getting $14 million more than they should have, than they did actually get. The thing is, the EDPA was a five-year contract. It was supposed to pay 14, they were supposed to, FedEx was supposed to purchase 14.2,000 tons, 170,000 tons a year at a cost of $360 with a profit margin of 15%. Now if you use that analysis just on strict arithmetic, it shows that as of from January 1, 2017, to May 31, 2019, which was the five-year period, they were out of pocket over $14 million because the contract wasn't performed. And that gets me back to the, there was some misstatement that the $2.6 million was found from the breach of the settlement agreement. The panel, the tribunal, specifically found that there was a breach of the EDPA and a breach of the settlement agreement by FedEx for that same period of time, and it said, hey, we're not going to award you $2.6 million twice for the same breach, in essence, because both of them called on FedEx to purchase the hay at the agreed-upon price of $360 a ton. And they breached the EDPA, which was still in full force in effect, by the terms of the settlement agreement and by the terms of the EDPA. So that's not a double recovery at all. In fact, they went out of their way to prevent a double recovery. And we're getting into the weeds, actually, is what we're doing, because the panel had two contracts to deal with. And they, by necessity, because the settlement agreement referenced and modified the EDPA, they had to look at both of those. So what they had to do is figure a damage analysis that was right. And first of all, it's not manifest disregard of the law as to 3358, because 3358 was not implicated. There was no finding that they were in a better position than they would have been had the contract been performed. That's either both of the contracts or the EDPA is modified by the settlement agreement. So that is basically the determination that the panel made, the tribunal made. And we're not here to get into the facts. We can't disagree with the facts, even if they got the facts wrong. We can't disagree with the law. And your argument, I gather, depends on the fact that you think they did get it wrong. They should have given you $14 million more. So, therefore, the fact that they may have given you $7 million more that the district court reduced, you didn't have a violation on 3358 because if the panel had done it correctly in the first place, you'd have $14 million more that you were dealing with. Is that right? Yes and no. We were ready to accept that because the arbitrators made the decision. We may not agree with their decision. I get that point. But I guess what I thought I heard you say was 3358 was not implicated here because the $7 million was perfectly appropriate. It's not a windfall. You actually lost money because the arbitrators didn't reach the other amount. Is that correct? There was $14 million plus that wasn't reached. That's why 3358 was not implicated from your perspective. From my perspective, I have no idea what the tribunal, what their perspective was on that. And we can't go there. And we can't and we shouldn't. But I thought the tribunal clearly said $7 million of that was allocatable to the money that Hay Day didn't or that FedEx didn't pay over. Well, actually, it's not a windfall in the sense that what the tribunal said was there was a material breach of certain provisions of the settlement agreement and the EDPA. And when they read them both together, they said those breaches basically prevented the they actually were the reason that the seven additional payments of $7 million by Hay Day was unnecessary. Basically, what they said is they breached the contract. It was a material breach which excused Hay Day's performance of the remaining seven. But if you also look at it, there's a liquidated damages clause that they said was inapplicable as well. And that's $7 million as well. So you're going – they did a – in my opinion, the tribunal did a fantastic job with the difficult issues that it was faced with. They had nine days of hearing. But my question is did the tribunal allocate the damages and account for the $7 million or did that only creep in once the district court looked at it? It actually only looked at it when they – it creeped in when the district court looked at it. Because if you do the analysis of the damages for the period of time, the calculations by the expert were close to that $19 million. It was basically the same ballpark. So, yes, the $7 million wasn't – they really, in essence, didn't get that $7 million out of pocket. What they did is they didn't have to turn it over to the other side is how that worked out. So the answer is the $19 million plus the costs and fees was based on the breaches of the EDPA through December 31, 2016, or based – you could look at it the other way. The tribunal said, hey, you can't get double recovery for the period September 16, 2016, through December 31, 2016. So basically that's that $2.6 million. So you take that away, they get the other monies. That's what their award was. That's how – again, I don't know really how they allocated it. They articulated it. They listened to the evidence, and they concluded that it was – that's the appropriate number. They looked at the expert testimony on the issue of damages. They considered all of the statutes that were argued. And again, 3358 wasn't mentioned in the award because it wasn't a statute that was argued by the parties before. It did – I'll have to say it was in Brees' potentially one of the statutes that would be implicated by the damage analysis. However, the tribunal never – never recognized it, never addressed it, never said, hey, this is the law, and we're disregarding it because, dang, it's just wrong. It won't be a right result if we do. They didn't do that. And we can't – we can't come in here now under this – the case law and say, hey, they're wrong. We're not permitted to do that. And from your perspective, the district court was wrong to mess with the $7 million? Yes, Your Honor. Again, the district court did a very good job of laying out the law regarding the standard, regarding the recitation of the facts where it was applied by the tribunal. But what the district court then did was essentially what the Athbic arbitrator did, is look at it and say, he made a decision that – and this is that on page 9 of the 10 – 9 and 10 of his award – I mean his order, the final order. And what he did is essentially said, hey, this is – this is so – they're going to get a double – they're going to get more than they should have, which is a factual finding. And so, gosh darn, we're going to make them – we're going to reduce it by that $7 million that was part of what the settlement agreement had as far as installment payments. That's what the district judge did. So he made a factual determination, and he applied the law differently. He looked – he did – he did what exactly – in that respect, he did what he wasn't supposed to do. He went beyond what he needed to do. And I apologize for rambling, but are there any questions? I think not. Turn it over to your colleague then. Yeah, to me, it's the – the essence of the agreement was well laid out in the 48 pages of the tribunal's partial final award and award. It was laid out, and what they did is they followed the IRAC formula to the letter. The issue, the rule of law, they talked about the law, what was applicable. Then they went and talked about the facts and the evidence. They talked about testimony. They talked about the documentation, over 1,000 exhibits. And they laid that out and made references in both the final award and the partial final award. And there is no way that it wasn't – their award was not drawn from the essence of the contract. So that plus the fact that 3358 was never implicated basically says it should be confirmed in its entirety. Very well. Thank you for – Thank you. Thank you. We'll now hear from your colleague, unless you don't want to talk. You don't have to. May it please the Court, Your Honor. Josh Huygens on behalf of Hay Day Farms. I feel like my colleague, Mr. Ferrari, laid out the case very well. I'm here to clarify and elaborate a little bit more. Your Honor's question about the $7 million. You know, it's our position that the question was whether – excuse me, Your Honor. One second. The question was whether Hay Day would have paid $7 million if the contract were fully performed. But the arbitrators looked at the $7 million and they looked at the liquidated damages clause and they said, hey, if we make – if we give FedEx a $7 million, they're reaping the benefit of their own breach for their liquidated damages clause. That was one of their reasoning as well. Additionally, ultimately the arbitrators applied the facts. They applied the contract to their award. That's all they had to do. You look at the award. They're citing it to paragraph after paragraph, term after term. And if we see that they arguably construed the contract, which they did, it must be confirmed. And this is the final award at SER 73? That's correct, Your Honor. You could turn to almost any page in the final award and you will see citations to the contract. And it's not our job to reinterpret the contract. We just – if we see the arbitration panel interpreting the contract and using that to reach their final award, then they did their job and it must be upheld. As far as manifest disregard of the law goes, Section 3358 is only applicable. There's a condition precedent to even look at Section 3358. The condition precedent is was Hay Day in a better position than it would have if the contract were fully performed. They didn't reach that finding, so they didn't even have to look at 3358. You only look at 3358 if you say, hey, Hay Day was in a better position. Maybe we should look at 3358 and reduce the award. Let me ask you this. We don't have a lot of time left, but your opponent makes the point that you really can't have it both ways and that the settlement agreement contained the financial terms. The parties that agreed upon it found there was a breach. The arbitrators looked at the numbers, but they didn't honor the release, which he thinks particularly dealt with certain pre-time periods. If he's right, would that meet the standard of manifest disregard? I don't believe so, Your Honor, and I can also speak on facts. Even though we're not supposed to look at the facts, if you look at the release section, that has a condition precedent as well, and the condition precedent says if FedEx has to pay Hay Day the amount agreed upon the settlement, and then the release will be in effect. So the condition precedent was arguably not satisfied, therefore there is no release. Exactly. I'm happy to answer any questions. So this is SCR 77. It says claimants are correct that the termination date of the EDPA was extended by the SA to June 2019 because respondents' failure to purchase hay through 2016 prevented and therefore excused payment of the $8 million by claimants. So I think that's what the district court – I'm trying to back into it, but it seems like the district court is saying, well, what's not fair here is that you determined all these other awards. We're going to accept all these other awards, but what's not fair is if that's the awards and you excluded the $7 million, the $7 million shouldn't have ever been excluded. That's an excellent point, Your Honor, and my response would be that the $7 million was reduced based upon a manifest disregard of the law prong. Wait, the district court said it was a manifest disregard. That's correct, and the district court reduced it because they said 3358 was the law that was manifestly disregarded. But if you look at the orders analysis, they said the impact of the omission was too great, and that's why they reduced it. But the impact of an omission is not the standard to reduce an award. They have to acknowledge the law. They have to look at the law, acknowledge it, and not apply it. That did not happen. Yeah, oh, I see what you're saying. You're saying because 3358 was never raised. It was never. Correct. You have to, and it needs to be, the standard is clear from the record. It needs to be clear from the record that the panel acknowledged applicable law and ignored it. That didn't happen. The judge said this law should have been applied, and the impact of not applying it was too great to ignore. That's not the standard. The judge at district court level is trying to apply his own version of fairness. He thought it wasn't fair, and that's why it was reduced. I viewed it differently. I hadn't thought about it quite that way, but what I viewed it as the district court said, look, I'm bound by the damages that the arbiters said. I may agree with it. I may not agree with it, but these are the damages. But what's clear is if that's the outer bounds, the $7 million still should have been considered. But I'll have to go back and look. If you look at the verbatim order, which the exact words were impact. Impact. And the standard is not impact. Very well. Thank you very much, counsel, for your argument. We have a very brief amount of rebuttal time. Please proceed. Thanks, Your Honors. If I may, just two brief points to the prior discussion. First is 3358 is a but-for world. It's what would have happened if everybody performed. You can't stand here and say everybody would have performed, but I get out of this part. That's their whole argument. It recurs back in circles on itself like that. What about this idea that this issue of 3358 was not brought up to the arbitrators, so that means that we have to pretend it doesn't exist? No, we have indicated in our brief the page citations to place this in the record. We did cite it to the arbitrator. We consistently cited it to the arbitrator. And please look at ER 253. The arbitrators spin back the verbiage that is in 3358. They were paid $580,000. They spent 1,000 hours reading briefs. They read the briefs that said 3358, but they cite it back at page ER 253 to the counsel's point. Also, there's no mystery about facts around this at all. It's not factual. There's $7 million that they didn't pay, and then 3358 says what happens if everyone performs? On page ER 117, they pay us $7 million. If they pay us $7 million, the release applies. That's ER 119, and that's how it should have ended. Thank you very much, Your Honors. Thank you very much. Thank you, counsel, for your arguments. We appreciate it very much. The case just argued is submitted, and the court stands adjourned for the day. All rise. This court for this session stands adjourned.
judges: SMITH, NELSON, UNKNOWN